**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| W. C. SPIVEY, III,, | Case No. 1:12-cv-00206-LJO-SKO-HC |
| Petitioner, | ORDER VACATING THE COURT'S DISMISSAL OF PETITIONER'S MOTION FOR A STAY (DOCS. 29, 12) |
| v. | ORDER DEEMING PETITIONER'S MOTION FOR LEAVE TO FILE AN AMENDED PETITION TO BE A MOTION FOR A STAY OF THE PROCEEDINGS (DOCS. 30, 12) |
| | FINDINGS AND RECOMMENDATIONS TO DENY PETITIONER'S MOTION FOR A STAY (DOCS. 30, 12) |
| CONNIE GIPSON, Warden, | |
| Respondent. | OBJECTIONS DEADLINE: THIRTY (30) DAYS |

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 and 303. Pending before the Court is Petitioner's motion for leave to file an amended petition for writ of habeas corpus that was filed on February 12, 2013, which was accompanied by a proposed first amended petition (FAP).  Respondent filed opposition to the motion to amend

1

the petition on March 8, 2013, and Petitioner filed a reply styled as a traverse on March 22, 2013.  Petitioner filed a supplemental reply without leave of Court on August 19, 2013 (doc. 34).  Because the information contained in the supplemental reply is not determinative of any issue pertinent to the outcome of the motion, the Court exercises its discretion to consider Petitioner's supplemental reply without having permitted Respondent to file a sur-reply.  Respondent will have an opportunity to address any of the supplemental material in objections to these findings and recommendations.

I.   <u>Summary of the Proceedings in the Present Case</u>

In the petition filed on February 13, 2012, Petitioner alleged he was an inmate of the High Desert State Prison (HDSP) serving a sentence of life without parole imposed by the Merced County Superior Court for Petitioner's conviction in May 2008 of first degree murder with special circumstances.  Petitioner raised three claims, including a suggestive photo identification, discovery withheld by the prosecution, and jury selection error.  (Pet., docs. 1 and 10, 1-5.)  Petitioner alleged that he exhausted all state court remedies as to these claims.

Although the initial petition was not verified, on March 19, 2012, Petitioner filed a verification of his petition with a copy of the initial petition.  (Doc. 10.)  On the same date, Petitioner filed a motion for leave to file an amended petition to raise the following claims: 1) Petitioner was deprived of his right to have every element of the offense proved, 2) the charges were impermissibly broadened, 3) trial counsel was ineffective at unspecified critical stages of the trial, and 4) there was

insufficient evidence to support a conviction of attempted robbery or a special circumstance finding.  (Doc. 12, 1-2.)  Petitioner contended that as to the claims sought to be added to the petition, he had not exhausted his state court remedies.  (Id. at 1.)

The motion to amend the petition was construed as a motion to stay the proceedings.  Respondent opposed the motion and answered the petition on November 1, 2012.  In the answer, Respondent addressed Petitioner's three claims of trial error on the merits. (Doc. 24, 6-30.)  Petitioner filed a reply to the opposition to the motion for a stay, styled as a traverse, on November 19, 2012.  The motion for a stay was dismissed as moot when the Court mistakenly relied on a record that did not pertain to Petitioner and incorrectly concluded that Petitioner had filed a petition in the California Supreme Court which had been denied.  The Court set a deadline for a motion to amend the petition, and in response, Petitioner filed the motion to amend the petition that is before the Court.

In his motion to amend the petition, Petitioner seeks to raise the following four grounds: 1) Petitioner was deprived of his rights to a fair trial and equal protection of the law by instructions that permitted the jury to find Petitioner guilty on a felony murder theory and thus to convict Petitioner of an allegedly willful murder without the prosecution's having to prove beyond a reasonable doubt the willfulness element of murder; 2) the charges were broadened in violation of Petitioner's Fourteenth Amendment right to due process of law when the element of willfulness was removed from the jury's consideration; 3) Petitioner's Sixth and Fourteenth Amendment right to the effective assistance of counsel was violated by trial

3

1  counsel's failure to correct the charging information to remove the

2  "willful" element from count one, and to declare a mistrial when the

3  verdict omitted a finding on willfulness; and 4) Petitioner's right

4  to due process of law was violated by the insufficiency of the

5  evidence to support a conviction for attempted robbery and thus to

6  satisfy the finding of special circumstances relating to counts one

7  and two.  (Doc. 31, 7-15.)

8       Respondent argues that the motion to amend the petition should

9  be denied because the claims Petitioner seeks to add are untimely,

10  do not relate back to the original habeas petition, and remain

11  unexhausted.  Respondent further contends that there is no basis for

12  equitable tolling of the statute of limitations.  Respondent argues

13  the motion to amend the petition should be denied because the

14  amendment would be futile.

15       II.  Background

16       Petitioner is serving a sentence of life without possibility of

17  parole that was imposed in the Merced County Superior Court (MCSC)

18  in May 2009 for first degree murder in the attempt to commit robbery

19  and with use of a knife, and attempted robbery with prior

20  convictions.  On appeal, the judgment was affirmed (case number

21  F058019) by the Court of Appeal of the State of California, Fifth

22  Appellate District (CCA).  (LD 1, 2; LD 4.)  The California Supreme

23  Court (CSC) denied Petitioner's petition for review on November 10,

24  2010 (case number S186005).  (LD 6.)[1]

25       On February 17, 2011, Petitioner filed a habeas petition

26  raising the prosecution's failure to disclose material favorable

27  _____

28  [1] "LD" refers to documents lodged in connection with the answer filed on November 1, 2012.

4

evidence.  (LD 7.)  Petitioner's signature on the petition is dated December 8, 2010.  (Id. at 6.)  There is no proof of service or other documentation that would indicate when the petition was provided to prison authorities for mailing or what type of mailing system was used.

The petition was denied on April 4, 2011, by the MCSC, which reasoned that the Petitioner's contentions did not constitute newly discovered evidence, all claims were raised or could have been raised on appeal, and Petitioner had failed to establish an exception to the rule barring reconsideration of the claims.  The MCSC cited In re Harris, 5 Cal.4th 813, 825-26 (1993) and In re Waltreus, 62 Cal.2d 218, 225 (1965).  (LD 8.)

Petitioner filed another habeas petition in the MCSC on November 1, 2011, raising the four new claims he seeks to raise in the present motion.  (LD 9, 1; LD 10, 1:18-19.)  The petition was signed on several pages with a date of October 20, 2011.  Petitioner has not provided any declaration concerning when he delivered the petition to prison authorities or mailed the petition.  (LD 10, 1:18-19.)

On December 7, 2011, the MCSC denied the petition.  The MCSC reasoned that Petitioner had filed a successive petition that did not raise all claims in one timely filed habeas petition, and thus the petition would be denied as abusive because Petitioner had not demonstrated that a fundamental miscarriage of justice would result if the MCSC declined to entertain his claims.  The MCSC cited In re Clark 5 Cal.4th 750, 797 (1993).  (LD 10.)

Petitioner's third state habeas petition was filed in the CCA on January 10, 2012 (case number F064031), and raised the four new

claims.  (LD 11.)   The petition form is dated December 12, 2011.  (Id. at 6.)   The attached proof of service by mail indicates that Petitioner deposited an unspecified document in the mail deposit box at High Desert State Prison on December 12, 2011.  Also attached to the petition form is a petition and memorandum of points and authorities which bears the date of October 20, 2011, next to the signature.  (Id., attachment at 14.)   A motion for appointment of counsel, verification, supporting declaration, and declaration of service by mail of the petition and motion for counsel attached to the end of the petition are dated January 5, 2012.  (LD 11.)   A "CDC-119" log of "SPECIAL PURPOSE LETTERS" reflects that on January 6, 2012, a letter in category "193" was sent to the CCA from the prison.  (Doc. 34, 9.)   The petition was summarily denied without a statement of reasons or citation of authority on February 3, 2012.  (LD 12.)

The Court takes judicial notice of the docket of the CCA in the Petitioner's third habeas proceeding of In re W. C. Spivey III, case number F064031.   The docket reflects that after the petition was denied on February 3, 2012, the CCA received correspondence from Petitioner concerning a request for a ninety-day extension of time on February 6, 2012, and a letter advising the CCA of Petitioner's new cell number on February 9, 2012.  The "CDC-119" log shows that Petitioner's letters in categories "1" and "193" were sent from the institution to the CCA on February 1 and 6, 2012.  (Doc. 34, 9.)

On February 8, 2012, Petitioner filed his petition here alleging the three original claims concerning an allegedly suggestive pretrial photographic line-up, denial of a motion for new trial based on Brady error, and denial of Petitioner's

6

<u>Batson</u> motion to dismiss the jury panel. (Doc. 1, 25.)[2] On March 19, 2012, Petitioner filed his motion to amend the federal petition and for a stay of the proceedings to exhaust his four new claims in state court. (Docs. 12, 13.) The CDC-119 log of special purpose letter shows that Petitioner sent correspondence to this Court on March 14 and 15, 2012. (Doc. 34, 9.)

On March 28, 2012, Petitioner's fourth state habeas petition was stamped filed in the MCSC. (LD 13.) The CDC-119 log of special purpose letters shows that an outgoing letter in category "193" was sent from the prison to the MCSC on March 26, 2012. (Doc. 34, 9.) Petitioner raised his four new claims in the petition, which was denied on May 8, 2012. The MCSC reasoned that since the petition raised claims that were raised and rejected by the MCSC in a prior petition, the remedy was to file a new petition in the Court of Appeal. The MCSC cited <u>In re Clark</u>, 5 Cal.4th 750, 767-68 (1993). (LD 13, LD 14.)

The CCA docket reflects that on March 29, 2012, the CCA filed a letter from Petitioner requesting a copy of the face sheet of the habeas petition filed in the CCA; Petitioner was mailed a copy of the face sheet. On June 21, 2012, this Court directed Respondent to respond to the federal petition and to address the motion for a stay. (Doc. 13.)

The CCA docket reflects that Petition filed a change of address on July 12, 2012. A "CDCR 119 CARD" reflects that mail from

---

[2] Petitioner executed a declaration under penalty of perjury that he had mailed the petition; the declaration was executed on February 8, 2012. (Doc. 1, 25.) The CDC-119 log of special purpose letters reflects that outgoing mail in category "193" was sent to this Court on February 9, 2012. (Doc. 34, 9.) The Court will infer that Petitioner surrendered the petition to prison authorities on February 8, 2012, the date of signature.

Petitioner was sent from the prison to the Supreme Court Clerk on July 9, 2012.  (Doc. 34, 7.)

The CCA docket reveals that on August 3, 2012, a letter from Petitioner was filed and that Petitioner was mailed a "2nd copy of the denial order".  A Corcoran "CDCR 119 CARD" confirms that Petitioner sent correspondence to a clerk of an unspecified court on August 1, 2012.  (Doc. 34, 7.)  On September 17, 2012, the CCA received a letter from Petitioner requesting the status of the case; the docket reflects that the CCA responded by "mailing another copy of the denial order."

On November 1, 2012, Respondent filed an answer to the federal petition and an opposition to the motion for stay and abeyance. Petitioner filed a traverse on November 19, 2012.  The motion for stay was dismissed as moot on January 17, 2013, and Petitioner was directed to file a motion for leave to amend the petition.  The instant motion was filed with a proposed first amended petition on February 12, 2013.

III.  <u>Exhaustion of State Court Remedies, Deeming Petitioner's Motion for Leave to Amend to be a Motion for a Stay, and Reconsideration of Petitioner's Motion for a Stay and Abeyance</u>

A petitioner who is in state custody and wishes to challenge collaterally a conviction by a petition for writ of habeas corpus must exhaust state judicial remedies.  28 U.S.C. § 2254(b)(1).  The exhaustion doctrine is based on comity to the state court and gives the state court the initial opportunity to correct the state's alleged constitutional deprivations.  <u>Coleman v. Thompson</u>, 501 U.S. 722, 731 (1991); <u>Rose v. Lundy</u>, 455 U.S. 509, 518 (1982); <u>Buffalo v. Sunn</u>, 854 F.2d 1158, 1162-63 (9th Cir. 1988).

8

A petitioner can satisfy the exhaustion requirement by providing the highest state court with the necessary jurisdiction a full and fair opportunity to consider each claim before presenting it to the federal court, and demonstrating that no state remedy remains available.  Picard v. Connor, 404 U.S. 270, 275-76 (1971); Johnson v. Zenon, 88 F.3d 828, 829 (9th Cir. 1996).  A federal court will find that the highest state court was given a full and fair opportunity to hear a claim if the petitioner has presented the highest state court with the claim's factual and legal basis. Duncan v. Henry, 513 U.S. 364, 365 (1995) (legal basis); Kenney v. Tamayo-Reyes, 504 U.S. 1, 9-10 (1992), superceded by statute as stated in Williams v. Taylor, 529 U.S. 362 (2000) (factual basis).

Additionally, the petitioner must have specifically told the state court that he was raising a federal constitutional claim. Duncan, 513 U.S. at 365-66; Lyons v. Crawford, 232 F.3d 666, 669 (9th Cir. 2000), amended, 247 F.3d 904 (9th Cir. 2001); Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir. 1999); Keating v. Hood, 133 F.3d 1240, 1241 (9th Cir. 1998).  In Duncan, the United States Supreme Court reiterated the rule as follows:

> In Picard v. Connor, 404 U.S. 270, 275...(1971), we said that exhaustion of state remedies requires that petitioners "fairly presen[t]" federal claims to the state courts in order to give the State the "'opportunity to pass upon and correct' alleged violations of the prisoners' federal rights" (some internal quotation marks omitted). If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state

9

court.

*Duncan*, 513 U.S. at 365-366.  The Ninth Circuit examined the rule further in *Lyons v. Crawford*, 232 F.3d 666, 668-69 (9th Cir. 2000), as amended by *Lyons v. Crawford*, 247 F.3d 904, 904-05 (9th Cir. 2001), stating:

> Our rule is that a state prisoner has not "fairly presented" (and thus exhausted) his federal claims in state court unless he specifically indicated to that court that those claims were based on federal law. *See*, *Shumway v. Payne*, 223 F.3d 982, 987-88 (9th Cir. 2000). Since the Supreme Court's decision in *Duncan*, this court has held that the petitioner must make the federal basis of the claim explicit either by citing federal law or the decisions of federal courts, even if the federal basis is "self-evident," *Gatlin v. Madding*, 189 F.3d 882, 889 (9th Cir. 1999) (citing *Anderson v. Harless*, 459 U.S. 4, 7... (1982), or the underlying claim would be decided under state law on the same considerations that would control resolution of the claim on federal grounds, see, *e.g.*, *Hiivala v. Wood*, 195 F.3d 1098, 1106-07 (9th Cir. 1999); *Johnson v. Zenon*, 88 F.3d 828, 830-31 (9th Cir. 1996); *Crotts*, 73 F.3d at 865.
> ...
> In *Johnson*, we explained that the petitioner must alert the state court to the fact that the relevant claim is a federal one without regard to how similar the state and federal standards for reviewing the claim may be or how obvious the violation of federal law is.

*Lyons v. Crawford*, 232 F.3d 666, 668-69 (9th Cir. 2000), as amended by *Lyons v. Crawford*, 247 F.3d 904, 904-05 (9th Cir. 2001).

Where none of a petitioner's claims has been presented to the highest state court as required by the exhaustion doctrine, the Court must dismiss the petition.  *Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006); *Jiminez v. Rice*, 276 F.3d 478, 481 (9th Cir. 2001).  The authority of a court to hold a mixed petition in abeyance pending exhaustion of the unexhausted claims has not been

extended to petitions that contain no exhausted claims.  <u>Rasberry</u>, 448 F.3d at 1154.

It is undisputed that Petitioner has failed to exhaust his state court remedies as to the claims which he seeks to add to the petition ("new claims").  Petitioner initially attempted to obtain a stay of this proceeding to exhaust state court remedies as to the new claims.  A review of his motion to add unexhausted claims to the petition (doc. 12), filed on March 19, 2012, shows that although Petitioner denominated the motion as an attempt to add unexhausted claims, the substance of the motion was an application to stay the fully exhausted claims pending exhaustion of the unexhausted claims, followed by amendment of the original petition to add the newly exhausted claims.  (Doc. 12, 1.)

Petitioner cited <u>Pliler v. Ford</u>, 542 U.S. 225, 230-31 (2004), in which the Court discussed a stay-and-abeyance procedure employed in the Ninth Circuit for habeas petitions that contained both exhausted and unexhausted claims ("mixed petitions").  The procedure involves dismissing any unexhausted claims from the petition, staying the remaining claims pending exhaustion of the unexhausted claims in state court, and amendment to add the newly exhausted claims that relate back to the original petition.  <u>Id.</u>

Because Petitioner sought a stay to permit exhaustion, the Court construed his initial motion to amend as a motion for a stay and permitted the parties to brief the motion.  However, due to this Court's later error, Petitioner's motion for a stay was dismissed because the Court mistakenly concluded that Petitioner had exhausted his new claims.  The Court never considered Petitioner's motion for a stay on the merits.  Petitioner sought to amend his petition only

11

when the Court mistakenly dismissed the motion for a stay and directed Petitioner instead to file a motion to amend the petition.

A court has the inherent power to control its docket and the disposition of its cases with economy of time and effort for both the Court and the parties. <u>Landis v. North American Co.</u>, 299 U.S. 248, 254-55 (1936); <u>Ferdik v. Bonzelet</u>, 963 F.2d 1258, 1260 (9th Cir. 1992). Here, the motion to amend the pleadings was premature. The Court concludes that the appropriate and most economical course of action is to vacate the Court's erroneous order of dismissal of the stay motion and to consider that motion on the merits in the first instance, in light of all the papers filed in connection with that motion and the submissions relating to the motion to amend. Accordingly, the Court's earlier order dismissing Petitioner's motion for a stay (doc. 29) is VACATED.

Petitioner's motion for leave to file a first amended petition is DEEMED to be a motion for a stay, which the Court will now consider by reviewing the merits of the motion in the first instance. The Court has considered all the papers submitted by both parties in connection with Petitioner's motions for a stay and for leave to file a first amended petition.

IV.  <u>Jurisdiction of the Magistrate Judge</u>

A magistrate judge has jurisdiction to determine matters that are non-dispositive of a claim or defense of a party. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; <u>Maisonville v. F2 America, Inc.</u>, 902 F.2d 746, 747 (9th Cir. 1990). Section 636(b)(1)(A) lists those motions which may not be determined by a magistrate judge, but a magistrate judge may determine any motion that is neither listed nor analogous to a motion listed in that category. <u>United States v.</u>

Rivera-Guerrero, 377 F.3d 1064, 1067-68 (9th Cir. 2004).  A
dispositive order is one which conclusively determines a disputed
question affecting the pendency of a claim or defense of a party.
Id. at 1068-69.  In determining a magistrate judge's authority, a
court considers the effect of the motion being brought in order to
determine whether it is properly characterized as dispositive or
non-dispositive of a claim or defense of a party.  United States v.
Rivera-Guerrero, 377 F.3d at 1068.  Where the effect of a denial of
a motion to amend to assert a compulsory counterclaim was to bar
defendants' recovery from plaintiff on the claim, the decision was
dispositive.  See, Hunt Energy Corp. v. Crosby-Mississippi Res.,
Ltd., 732 F.Supp. 1378, 1389 n.18 (S.D.Miss. 1989).

     Here, although the Court considers the Petitioner's motion for
a stay to permit exhaustion of unexhausted claims, the effect of a
denial of that motion is essentially to foreclose Petitioner's new
claims.  A denial based on futility of amendment would forever bar
the Petitioner's new claims.  Thus, with respect to the merits of
the motion, the Magistrate Judge proceeds by way of findings and
recommendations.

     V.   Petitioner's Motion for Stay and Abeyance

     Petitioner's moving papers identify the new claims and seek a
stay to permit exhaustion of the new claims.  (Doc. 12.)  Respondent
opposes the motion alleging Petitioner has failed to establish good
cause for his failure to exhaust the claims first in state court.
(Doc. 26.)  Petitioner's reply details Petitioner's efforts to
ascertain the status of his state habeas corpus and to pursue his
state court remedies.  (Docs. 28, 33, 34.)

///

A.   Stay pursuant to Rhines v. Weber

Because the petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA applies to the petition.  Lindh v. Murphy, 521 U.S. 320, 327 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997).

A district court has discretion to stay a petition which it may validly consider on the merits.  Rhines v. Weber, 544 U.S. 269, 276 (2005); King v. Ryan, 564 F.3d 1133, 1138-39 (9th Cir. 2009).  A petition may be stayed either under Rhines, or under Kelly v. Small, 315 F.3d 1063 (9th Cir. 2003).  King v. Ryan, 564 F.3d at 1138-41.

Under Rhines, the Court's discretion to stay proceedings is circumscribed by the AEDPA.  Rhines, 544 U.S. at 276-77.  In light of the AEDPA's objectives, "stay and abeyance [is] available only in limited circumstances" and "is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court."  Id. at 277-78.  A stay of a mixed petition pursuant to Rhines is required only if 1) the petitioner has good cause for his failure to exhaust his claims in state court; 2) the unexhausted claims are potentially meritorious; and 3) there is no indication that the petitioner intentionally engaged in dilatory litigation tactics.  Id.

The Supreme Court has not articulated what constitutes good cause under Rhines, but it has stated that "[a] petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file" a "protective" petition in federal court.  Pace v. DiGuglielmo, 544 U.S. 408, 416 (2005).  The standard is a less stringent one than that for good

14

cause to establish equitable tolling, which requires that extraordinary circumstances beyond a petitioner's control be the proximate cause of any delay.  Jackson v. Roe, 425 F.3d 654, 661-62 (9th Cir. 2005).  The Ninth Circuit has recognized, however, that "a stay-and-abeyance should be available only in limited circumstances." Id. at 661 (internal quotation marks omitted); see, Wooten v. Kirkland, 540 F.3d 1019, 1024 (9th Cir. 2008), cert. denied, -- U.S. --, 129 S.Ct. 2771 (2009) (a petitioner's impression that counsel had exhausted a claim did not demonstrate good cause). The principles of Rhines must be applied with an eye toward the AEDPA's dual purposes of reducing delays in executing state and federal criminal sentences and streamlining federal habeas proceedings by increasing a petitioner's incentive to exhaust all claims in state court.  Wooten v. Kirkland, 540 F.3d at 1024.

In his first motion seeking to add unexhausted claims to the petition, Petitioner did not set forth any factual basis for a stay. (Doc. 12.)  In response to the opposition to the motion, Petitioner stated that he was never notified of "the ruling on 2/3/2012." (Doc. 28, 1.)  Petitioner submitted documentation to illustrate his efforts to exhaust state court remedies, including what appears to be his undated letter to the CCA clerk asking for a copy of the petition's face sheet reflecting the date the petition for writ was received and filed (doc. 28, 3); a copy of the face sheet of Petitioner's habeas petition filed in the CCA (case number F064031) on January 10, 2012 (doc. 28, 5); a copy of a letter to the clerk of the CCA dated July 31, 2012, in which Petitioner referred to case number F064031, stated he had not heard anything regarding the status of the ruling, set forth a declaration stating he had not

received a ruling on the petition, and asked for a notice of ruling or permission to withdraw his petition without prejudice to refiling (doc. 28, 6-7); and a copy of Petitioner's petition for review (doc. 28, 8-37).  There are no further arguments or submissions in the motion to amend and reply to the opposition to the motion to amend.

Petitioner's showing of good cause is, therefore, the delay he experienced in receiving the CCA's denial of Petitioner's habeas, which Petitioner alleges lasted from February 3, 2012, when the petition was summarily denied, until an uncertain date after August 3, 2012 or September 17, 2012, when the CCA mailed to Petitioner copies of the denial order.  However, it does not appear that any delay in 2012 obstructed or prevented exhaustion of state court remedies because Petitioner did not seek to exhaust his claims in the California Supreme Court after he received notice of the CCA's denial of his habeas petition.  Instead, Petitioner returned to the MCSC, where he had already raised the new claims and had received a denial based on the successive nature of the petition.

It is undisputed that Petitioner has not attempted to present his new claims to the California Supreme Court.  Thus, although Petitioner suffered some delay in receiving the ruling from the Court of Appeal, Petitioner continued his exhaustion of state court remedies, filed an additional petition in the trial court before he received notice of the CCA's ruling, and never sought to present his new claims to the state's highest court.  Under these circumstances, Petitioner has not shown good cause for failing to exhaust his state court remedies earlier.  Accordingly, Petitioner's request for a Rhines stay should be denied.

///

B.  Kelly Stay

A petition may also be stayed pursuant to the procedure set forth by the Ninth Circuit in Kelly v. Small, 315 F.3d 1063.  Under this three-step procedure: 1) the petitioner files an amended petition deleting the unexhausted claims; 2) the district court stays and holds in abeyance the fully exhausted petition; and 3) the petitioner later amends the petition to include the newly exhausted claims.  See, King v. Ryan, 564 F.3d at 1135.  However, the amendment is only allowed if the additional claims are timely.  Id. at 1140-41.

A stay under Rhines permits a district court to stay a mixed petition and does not require that unexhausted claims be dismissed while the petitioner attempts to exhaust them in state court.  In contrast, a stay pursuant to the three-step Kelly procedure allows a district court to stay a fully exhausted petition, and it requires that any unexhausted claims be dismissed.  Jackson v. Roe, 425 F.3d 654, 661 (9th Cir. 2005).  In this circuit it is recognized that the Kelly procedure remains available after the decision in Rhines and is available without a showing of good cause.  King v. Ryan, 564 F.3d at 1140.

However, a petitioner's use of Kelly's three-step procedure is subject to the requirement of Mayle v. Felix, 545 U.S. 644 (2005), that any newly exhausted claims that a petitioner seeks to add to a pending federal habeas petition must be timely or relate back to claims contained in the original petition that were exhausted at the time of filing.  King v. Ryan, 564 F.3d at 1143.  Respondent argues that Petitioner's new claims are unexhausted and untimely, and do not relate back to exhausted claims that were alleged in the

original federal habeas corpus petition.  Thus, to stay the petition for exhaustion of claims that are untimely and would not relate back would be pointless, and any attempt to amend the petition to state the new claims would be futile.

### 1.  Timeliness of the New Claims

A <u>Kelly</u> stay may be denied where the petitioner's new claims are deemed to be untimely and do not relate back to exhausted claims.  <u>King v. Ryan</u>, 564 F.3d at 1141-42.

The AEDPA provides a one-year period of limitation in which a petitioner must file a petition for writ of habeas corpus.  28 U.S.C. § 2244(d)(1).  As amended, subdivision (d) reads:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

   (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

   (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

   (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively appicable to cases on collateral review; or

   (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation

18

1  under this subsection.

2  28 U.S.C. § 2244(d).

3       a.  _Commencement of the Limitations Period_

4       Under § 2244(d)(1)(A), the "judgment" refers to the sentence

5  imposed on the petitioner.  _Burton v. Stewart_, 549 U.S. 147, 156-57

6  (2007).  The last sentence was imposed on Petitioner on May 21,

7  2009.  (LD 16, 489.)

8       Under § 2244(d)(1)(A), a judgment becomes final either upon the

9  conclusion of direct review or the expiration of the time for

10 seeking such review in the highest court from which review could be

11 sought.  _Wixom v. Washington_, 264 F.3d 894, 897 (9th Cir. 2001).

12 The statute commences to run pursuant to § 2244(d)(1)(A) upon either

13 1) the conclusion of all direct criminal appeals in the state court

14 system, followed by either the completion of denial of certiorari

15 proceedings before the United States Supreme Court; or 2) if

16 certiorari was not sought, then by the conclusion of all direct

17 criminal appeals in the state court system followed by the

18 expiration of the time permitted for filing a petition for writ of

19 certiorari.  _Wixom_, 264 F.3d at 897 (quoting _Smith v. Bowersox_, 159

20 F.3d 345, 348 (8th Cir. 1998), _cert. denied_, 525 U.S. 1187 (1999)).

21 Neither party has indicated that Petitioner sought certiorari from

22 the United States Supreme Court.

23      Here, Petitioner's direct criminal appeals in the state court

24 system concluded when his petition for review was denied by the

25 California Supreme Court on November 10, 2010.  The time permitted

26 for seeking certiorari was ninety days.  Supreme Court Rule 13;

27 _Porter v. Ollison_, 620 F.3d 952, 958-59 (9th Cir. 2010); _Bowen v._

28 _Roe_, 188 F.3d 1157, 1159 (9th Cir. 1999).

1  The Court will apply Fed. R. Civ. P. 6(a) in calculating the

2  pertinent time periods.  See, Waldrip v. Hall, 548 F.3d 729, 735 n.2

3  (9th Cir. 2008), cert. denied, 130 S.Ct. 2415 (2010).  Applying Fed.

4  R. Civ. P. 6(a)(1)(A), the day of the triggering event is excluded

5  from the calculation.  Thus, the ninety-day period commenced on

6  November 11, 2010, the day following the California Supreme Court's

7  denial of review.  Further applying Rule 6(a)(1)(A), which requires

8  counting every day, the ninetieth day was February 8, 2011.  Thus,

9  the judgment became final within the meaning of § 2244(d)(1)(A) on

10  February 8, 2011.   Therefore, the limitation period began to run on

11  February 9, 2011, and, absent any tolling, concluded one year later

12  on February 8, 2012.

13               b)   Statutory Tolling

14  Title 28 U.S.C. § 2244(d)(2) states that the "time during which

15  a properly filed application for State post-conviction or other

16  collateral review with respect to the pertinent judgment or claim is

17  pending shall not be counted toward" the one-year limitation period.

18  28 U.S.C. § 2244(d)(2).

19  An application for collateral review is "pending" in state

20  court "as long as the ordinary state collateral review process is

21  'in continuance'- i.e., 'until the completion of' that process."

22  Carey v. Saffold, 536 U.S. 214, 219-20 (2002).  In California, this

23  generally means that the statute of limitations is tolled from the

24  time the first state habeas petition is filed until the California

25  Supreme Court rejects the petitioner's final collateral challenge,

26  as long as the petitioner did not "unreasonably delay" in seeking

27  review.  Id. at 221-23; accord, Nino v. Galaza, 183 F.3d 1003, 1006

28  (9th Cir. 1999).

1   The statute of limitations is not tolled from the time a final

2   decision is issued on direct state appeal and the time the first

3   state collateral challenge is filed because there is no case

4   "pending" during that interval.  Nino v. Galaza, 183 F.3d at 1006;

5   see, Lawrence v. Florida, 549 U.S. 327, 330-33 (2007) (holding that

6   the time period after a state court's denial of state post-

7   conviction relief and while a petition for certiorari is pending in

8   the United States Supreme Court is not tolled because no application

9   for state post-conviction or other state collateral review is

10  pending).  Here, the limitation period commenced on February 9,

11  2011.  Petitioner's first state habeas petition, which alleged Brady

12  error, was stamped as filed in the MCSC on February 17, 2011.

13      Habeas Rule 3(d) provides that a filing by a prisoner is timely

14  if deposited in the institution's internal mailing system on or

15  before the last day for filing.  The rule requires the inmate to use

16  the custodial institution's system designed for legal mail; timely

17  filing may be shown by a declaration in compliance with 28 U.S.C.

18  § 1746 or by a notarized statement setting forth the date of deposit

19  and verifying prepayment of first-class postage.  Id.

20      Habeas Rule 3(d) reflects the "mailbox rule," initially

21  developed in case law, pursuant to which a prisoner's pro se habeas

22  petition is "deemed filed when he hands it over to prison

23  authorities for mailing to the relevant court."  Houston v. Lack,

24  487 U.S. 266, 276 (1988); Huizar v. Carey, 273 F.3d 1220, 1222 (9th

25  Cir. 2001).  The mailbox rule applies to federal and state petitions

26  alike.  Campbell v. Henry, 614 F.3d 1056, 1058-59 (9th Cir. 2010)

27  (citing Stillman v. LaMarque, 319 F.3d 1199, 1201 (9th. Cir. 2003),

28  and Smith v. Ratelle, 323 F.3d 813, 816 n.2 (9th Cir. 2003)).  The

mailbox rule, liberally applied, in effect assumes that absent evidence to the contrary, a legal document is filed on the date it was delivered to prison authorities and that a petition was delivered on the day it was signed. Houston v. Lack, 487 U.S. at 275-76; Roberts v. Marshall, 627 F.3d 768, 770 n.1 (9th Cir. 2010); Campbell v. Henry, 614 F.3d 1056, 1058-59 (9th Cir. 2010); Lewis v. Mitchell, 173 F.Supp.2d 1057, 1058 n.1 (C.D.Cal. 2001). The date a petition is signed may be inferred to be the earliest possible date an inmate could submit his petition to prison authorities for filing under the mailbox rule. Jenkins v. Johnson, 330 F.3d 1146, 1149 n.2 (9th Cir. 2003), overruled on other grounds, Pace v. DiGuglielmo, 544 U.S. 408 (2005). However, if there is a long delay between the alleged mailing and receipt by a court, a district court may attribute the discrepancy to various causes, including the court, the postal service, the prison authorities, or the prisoner himself. See, Koch v. Ricketts, 68 F.3d 1191, 1193 n.3 (9th Cir. 1995) (concerning analogous Fed. R. App. P. 4(c)).

Here, although the petition's date of signature -- December 8, 2010 -- is over two months before the date of filing stamped by the MCSC, Respondent has not introduced any evidence to rebut the presumption of the mailbox rule that the date of signature is the date of delivery to prison authorities. The Court will liberally apply the mailbox rule and concludes that pursuant to this rule, Petitioner constructively filed the petition in the MCSC on December 8, 2010.

Respondent concedes that the first state habeas petition was properly filed. However, a collateral action filed before the commencement of the running of the statutory limitation period has

no tolling consequence.  <u>Waldrip v. Hall</u>, 548 F.3d at 735.  Here, the filing of the first state habeas petition before the finality of the judgment served only to toll the running of the statutory period from February 9, 2011, the first day of the statutory period, through April 4, 2011, the date on which the first state habeas petition was denied, for a total of fifty-five (55) days of tolling.

Petitioner's second state habeas petition was marked filed in the MCSC on November 1, 2011.  However, the date of signature on several pages in the petition is October 20, 2011.  Respondent has not provided any evidence to rebut the presumption that the date of signature was the date the petition was delivered to prison authorities.  Accordingly, the Court concludes that Petitioner constructively filed the petition on October 20, 2011.

This petition raised Petitioner's new claims (1) denial of the right to have every element of the crime proven, 2) the charges were impermissibly broadened, 3) trial counsel provided ineffective assistance at critical stages of the trial [regarding the first two claims concerning proof of all elements of the crime and impermissible broadening of the charges], and 4) the convictions of attempted robbery and the findings on the special circumstance allegation were not supported by sufficient evidence).  Respondent contends that Petitioner's second state petition did not toll the running of the statute because Petitioner was not pursuing his application up the ladder of the state court system.

Review is "pending" within the meaning of § 2244(d)(2) only where a prisoner is pursuing a single, full round of habeas relief in state court; no review is "pending" where a prisoner files a second petition which raises new claims and merely elaborates the

23

facts relating to the claims in a prior petition or an attempt to correct the prior petition's deficiencies.  Stancle v. Clay, 692 F.3d 948, 951, 954-56 (9th Cir. 2012), cert. den., - U.S. -, 133 S.Ct. 1465 (2013); Banjo v. Ayers, 614 F.3d 964, 968-69 (9th Cir. 2010), cert. den., Banjo v. Cullen, - U.S. -, 131 S.Ct. 3023 (2011).

Here, Petitioner's second state petition was filed in the same court as the first, raised new claims, and was not limited to an elaboration of the facts relating to the first petition's claims concerning the suggestive identification and errors relating to the prosecution's duty of disclosure and jury selection.  Thus, Petitioner was not pursuing a single, full round of habeas relief in state court.  Therefore, Petitioner is not entitled to statutory "gap tolling" between the denial of the first petition and the filing of the second.  Accordingly, 198 days of the limitation period ran after the denial of the first state petition on April 4, 2011, until the filing of the second on October 20, 2011.  Assuming that the second state habeas petition filed on October 20, 2011, was not an improperly filed successive petition (see Respondent's Opposition, doc. 32, 11), Petitioner is entitled to statutory tolling for forty-nine (49) days while the second petition was pending from October 20, 2011, through December 7, 2011, the date the second petition was denied.

Respondent concedes that Petitioner properly filed his third state habeas petition which raised the same new claims that had been raised in the second MCSC petition.  Although stamped filed as of January 10, 2012, the third state habeas petition contained a proof of service of the petition and attached motion for counsel that was dated January 5, 2012.  It will be inferred that the petition was

constructively filed on January 5, 2012.  Thus, Petitioner's third
state habeas petition tolled the running of the statute from January
5, 2012, the date on which the petition was constructively filed,
until February 3, 2012, the date the petition was denied, for a
period of thirty (30) days.  Further, because Petitioner was
proceeding with his claims to a higher court, Petitioner is entitled
to twenty-eight (28) days of "gap" tolling from December 8, 2011,
through January 4, 2012, the time period between the denial of the
second petition filed in the MCSC and the filing of the petition in
the CCA.  Thus, Petitioner is entitled to statutory tolling for an
additional fifty-eight (58) days from December 7, 2011, through
February 3, 2012.

The filing of the federal petition here on February 13, 2012,
did not toll the statute because it was not an application for
review by a state court within the meaning of 28 U.S.C.
§ 2244(d)(2).  Duncan v. Walker, 533 U.S. 167, 172 (2001).

Petitioner's fourth state habeas petition was marked filed in
the MCSC on March 28, 2012.  The petition was dated October 20,
2011.  Review of this petition (LD 13) and the previous MCSC
petition (LD 9) shows that the two petitions are identical.  It is
not logically possible that Petitioner delivered the two petitions
to the prison authorities for mailing on the same date.  Under these
circumstances, the date of October 20, 2011, that appears next to
the signature, will not be inferred to be the date of signature of
the later MCSC petition.  The mail log shows that the petition was
sent from the institution on March 26, 2012.  (Doc. 34, 9.)  It is
reasonably inferred that as of this date, Petitioner had delivered
the petition to the prison authorities for mailing.  Liberally

applying the mailbox rule, Petitioner constructively filed his fourth state habeas petition on March 26, 2012.

This petition not only raised the same new claims that had been raised in the second state habeas petition previously filed in the MCSC, but it was also actually identical with the earlier petition except for a verification that was included in the earlier petition but not in the later one. (LD 9, 13.) The fourth state habeas petition thus could not be considered an elaboration of, or an attempt to correct deficiencies in, the second state petition because there was no additional matter in the fourth state petition that was not in the second one. Therefore, at the time the fourth petition was filed, there was no petition "pending" within the meaning of § 2244(d)(2).

The fourth petition was denied by the MCSC with a citation to In re Clark, 5 Cal.4th 750, 767-68 (1993) and an express statement that the petition was denied because it was a repeated presentation of claims that the court had rejected in a prior petition. (Doc. 14.) Because the petition was denied as a successive petition that improperly raised contentions in a piecemeal fashion, it cannot be the basis of gap tolling. For gap tolling to be based on a second round, the petition cannot be untimely or an improper successive petition. Porter v. Ollison, 620 F.3d 952, 958 (9th Cir. 2010); Lewis v. Mitchell, 173 F.Supp.2d 1057, 1061 (C.D.Cal. 2001).

Accordingly, the statute of limitations ran from the day following the denial of the CCA petition on February 3, 2012, until the filing of the fourth state habeas petition in the MCSC on March 26, 2012, for a total of fifty-one (51) days. The pendency of the fourth petition tolled the running of the statute of limitations

from March 26, 2012, through May 8, 2012, the date on which the MCSC denied the fourth petition, for a total of forty-four (44) days.

In sum, Petitioner's state petitions tolled the statute for two hundred six (206) days.  At the time that Petitioner's fourth and last state petition was denied on May 8, 2012, 249 days of the statutory limitation period had run, leaving 116 days before the expiration of the limitation period.  One hundred and sixteen days after May 8, 2012, was September 1, 2012.  Thus, the statutory period expired on September 1, 2012.

Petitioner first moved to amend his petition on March 19, 2012.  However, the fact that this date was within the limitations period is not determinative.  Although Petitioner sought a Rhines stay of the petition, the Court's analysis has led to a conclusion that Petitioner has not shown good cause for such a stay.  Thus, Petitioner qualifies only for a Kelly stay.  As previously noted, a petitioner who has sought and received a stay pursuant to Kelly v. Small is permitted to amend his petition to add newly exhausted claims only if those claims, once exhausted, are either timely or relate back to exhausted claims set forth in a timely petition.  King v. Ryan, 564 F.3d at 1135, 1140-43.  The Kelly procedure does nothing to protect a petitioner's unexhausted claims from untimeliness during the time that the petitioner is exhausting state court remedies as to the unexhausted claims.  Id. at 1141.

It is undisputed that Petitioner has not exhausted his new claims.  Thus, any attempt to amend the petition to add the new claims will be foreclosed by the untimeliness of the claims unless the running of the statute is equitably tolled or the new claims relate back to exhausted claims in the original petition.  As

27

Respondent notes, it would be futile to stay the petition if any newly exhausted claims would be untimely.

### c) Equitable Tolling

Petitioner argues that he is entitled to equitable tolling for the time during which he failed to receive notice of the CCA's denial of his habeas petition from February 3, 2012, the date of denial, until an uncertain date after August 3, 2012, or September 17, 2012, when the CCA mailed to Petitioner additional copies of the denial order.

The one-year limitation period of § 2244 is subject to equitable tolling where the petitioner shows that he or she has been diligent, and extraordinary circumstances have prevented the petitioner from filing a timely petition. Holland v. Florida, – U.S. –, 130 S.Ct. 2549, 2560, 2562 (2010).  Petitioner bears the burden of showing the requisite extraordinary circumstances and diligence. Chaffer v. Prosper, 592 F.3d 1046, 1048 (9th Cir. 2010). A petitioner must provide specific facts regarding what was done to pursue the petitioner's claims to demonstrate that equitable tolling is warranted. Roy v. Lampert, 465 F.3d 964, 973 (9th Cir. 2006). Conclusional allegations are generally inadequate. Williams v. Dexter, 649 F.Supp.2d 1055, 1061-62 (C.D.Cal. 2009).  The petitioner must show that the extraordinary circumstances were the cause of his untimeliness and that the extraordinary circumstances made it impossible to file a petition on time. Ramirez v. Yates, 571 F.3d 993, 997 (9th Cir. 2009).

Where a prisoner fails to show any causal connection between the grounds upon which he asserts a right to equitable tolling and his inability to timely file a federal habeas application, the

28

equitable tolling claim will be denied.  Gaston v. Palmer, 417 F.3d
1030, 1034-35 (9th Cir. 2005).  A prisoner's or counsel's failure to
recognize that a state filing was unreasonably delayed under
California law is not the result of an "external force" that
rendered timeliness impossible, but rather is attributable to the
petitioner as the result of his own actions.  Velasquez v. Kirkland,
639 F.3d 964, 969 (9th Cir. 2011).

The diligence required for equitable tolling is reasonable
diligence, not "maximum feasible diligence."  Holland v. Florida,
130 S.Ct. at 2565.  However, "the threshold necessary to trigger
equitable tolling [under AEDPA] is very high, lest the exceptions
swallow the rule."  Spitsyn v. Moore, 345 F.3d 796, 799 (quoting
Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002)).  A
petitioner seeking equitable tolling must demonstrate reasonable
diligence while exhausting state court remedies and while attempting
to file a federal petition during the period after the extraordinary
circumstances began.  Roy v. Lampert, 465 F.3d 964, 971 (9th Cir.
2006).  The effort required is what a reasonable person might be
expected to deliver under his or her particular circumstances.  Doe
v. Busby, 661 F.3d 1001, 1015 (9th Cir. 2011).  Because a pro se
petitioner's habeas filings must be construed with deference, a
court will construe liberally such a petitioner's allegations
regarding diligence.  Roy v. Lampert, 465 F.3d 964, 970 (9th Cir.
2006).

A prisoner's lack of knowledge that the state courts have
reached a final resolution of his case can provide grounds for
equitable tolling if the prisoner has acted diligently in the
matter.  Ramirez v. Yates, 571 F.3d at 997; White v. Ollison, 530

F.Supp.2d 1077, 1083-84 (C.D.Cal. 2007) (statute equitably tolled
for approximately two and one-half months between the superior
court's denial of the petitioner's habeas petition and the date on
which the petitioner received notice of the court's denial, and
collecting authorities); Lewis v. Mitchell, 173 F.Supp.2d 1057,
1061-62 (C.D.Cal. 2001) (statute equitably tolled for the period
following a court's ruling and the petitioner's receipt of notice of
it, where the petitioner had not been notified of the state supreme
court's denial of her habeas petition for more than five months
after the denial because the prison returned the mailed notification
of the denial to the state supreme court because the prisoner's
prison number did not appear on the envelope, despite petitioner's
having provided her prisoner number to the court); Lopez v.
Scribner, 2008 WL 2441362, *7-*9 (No. CV 07-6954-ODW (JTL), C.D.Cal.
Apr. 11, 2008) (assuming that the statute was equitably tolled
during the time between a court's denial of a first state habeas
petition and the date the petitioner learned of the denial, where
the petitioner did not receive notice of the court's September 2006
denial of a petition filed in August 2006 until the petitioner
sought a ruling in February 2007, and the delay made it impossible
for the petitioner to file a timely federal habeas petition).  To
determine whether a petitioner is entitled to such tolling, it must
be determined on what date the petitioner received notice, whether
the petitioner acted diligently to receive notice, and whether the
alleged delay of notice caused the untimeliness of the filing and
made a timely filing impossible.  Ramirez v. Yates, 571 F.3d at 998.
     Here, Petitioner alleges that for an uncertain period of time
of approximately six or seven months, he did not know that the CCA

30

had denied his petition.  There is no declaration concerning the precise date on which Petitioner received notice of the ruling, but even assuming Petitioner was diligent in his efforts to ascertain the status of his habeas petition in the CCA, the delay in notification did not cause the untimeliness of Petitioner's new, unexhausted claims.  As Respondent notes, in November 2010, Petitioner's counsel had instructed him with respect to federal habeas corpus and the need to exhaust state court remedies by petitioning the California Supreme Court for review of any issues not included in the direct appeal.  (Doc. 26, 7-9, 8.)  Thus, Petitioner knew he had to proceed to the California Supreme Court for review of any claims he sought to include in a federal petition.

However, once he received notice of the CCA's ruling, Petitioner did not proceed with his claims to the California Supreme Court; instead, he filed another petition in the MCSC raising the same new claims.  It is undisputed that Petitioner did not ultimately seek to exhaust his new claims by presenting them in the California Supreme Court.  Thus, Petitioner has not shown that any delay in the CCA rendered him unable to exhaust his state court remedies or otherwise affected the timeliness of the new claims.

In sum, although Petitioner may have suffered a delay in notification of the CCA's ruling, Petitioner has not shown that the delay caused the untimeliness of his claims.  Petitioner has not shown that he is entitled to equitable tolling.

d)   Relation Back of Claims

Respondent argues that granting Petitioner leave to amend his petition would be futile because the new claims would not relate back to the exhausted claims in the originally filed petition.  If

31

Petitioner's new claims are otherwise untimely and would not relate back to exhausted claims in the originally filed petition, granting a stay would be futile because no matter how long the present action were held in abeyance, Petitioner could not present new claims that would be timely or would relate back to timely claims.

A habeas petition "may be amended... as provided in the rules of procedure applicable to civil actions."  28 U.S.C. § 2242.  Fed. R. Civ. P. 15 is applicable to habeas corpus proceedings.  28 U.S.C. § 2242; Fed. R. Civ. P. 81(a)(2); Habeas Corpus Rule 11; Mayle v. Felix, 545 U.S. at 655.

An amendment to a pleading relates back to the date of the original pleading when 1) the law that provides the applicable statute of limitations allows relation back, 2) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out, or attempted to be set out, in the original pleading, or 3) the amendment changes the party or naming of a party under specified circumstances.  Fed. R. Civ. P. 15(c)(1).  In a habeas corpus case, the "original pleading" referred to in Rule 15 is the petition.  Mayle v. Felix, 545 U.S. at 655.  A habeas petition differs from a complaint in an ordinary civil case, however.  In ordinary civil cases, notice pleading is sufficient; however, Habeas Rule 2(c) requires that a habeas petition not simply meet the general standard of notice pleading, but rather specify all the grounds for relief available to the petitioner and state the facts supporting each ground.  Mayle v. Felix, 545 U.S. at 655.

Relation back is appropriate in habeas cases where the original and amended petitions state claims that are tied to a common core of operative facts.  Mayle, 545 U.S. at 664.  The claims added by

32

amendment must arise from the same core facts as the timely filed claims and must depend upon events not separate in "both time and type" from the originally raised episodes.  Mayle, 545 U.S. at 657. Thus, the terms "conduct, transaction, or occurrence" in Fed. R. Civ. P. 15(c)(1)(B) are not interpreted so broadly that it is sufficient that a claim first asserted in an amended petition simply stems from the same trial, conviction, or sentence that was the subject of a claim in an original petition.  Mayle v. Felix, 545 U.S. at 656-57.  In Mayle, the Court concluded that the petitioner's pretrial statements, which were the subject of an amended petition, were separated in time and type from a witness's videotaped statements, which occurred at a different time and place and were the basis of a claim in the original petition.  Thus, relation back was not appropriate.  Mayle, 545 U.S. at 657, 659-60.

Here, the exhausted claims in the initially filed petition concerned a suggestive, pretrial photographic identification; the prosecution's withholding of allegedly material evidence; and error in jury selection.  In his first new claim, Petitioner alleges that although he was charged with a willful and malicious murder in violation of Cal. Pen. Code § 187, the jury was allowed to find him guilty of murder on a felony murder theory, which supported guilt even if the jury believed that the killing was accidental or unintentional.  Petitioner thus complains that he was deprived of his right to have the jury find him guilty of every element of the crime as charged.  The facts of the new claim relate to the homicide charge against Petitioner and the legal issues presented to the jury that related to that charge.  These facts are not the same core facts as those involved in the timely claims; they do not relate to

the pretrial identification, the prosecution's failure to disclose material evidence, or jury selection.  The new claim is based on events that are different in both time and type from the originally raised claims.  Although both the new claim and the original jury selection claims relate to proceedings before the jury, this is not a sufficient relationship to permit relation back.  Cf., Hebner v. McGrath, 543 F.3d 1133, 1138-39 (9th Cir. 2008) (holding that a claim concerning jury instructions that allegedly lowered the burden of proof did not relate back to a claim concerning the admissibility of evidence).

Petitioner's second new claim alleges he suffered a violation of due process based on the broadening of the charges.  Although this claim is related to the first new claim, like the first new claim, it relies on separate and different facts from those in the original claims regarding the pretrial photo identification, a violation of the prosecution's duty to disclose material favorable evidence, and jury selection error.  The second claim concerns the scope of the accusation and the extent of the evidence considered by the jury with respect to the accusation, different factual matters from those forming the basis of the initially alleged claims. Further, the fact that two otherwise factually separate claims both relate to a denial of due process does not constitute an operative fact sufficient to tie claims together.  See, Hebner v. McGrath, 543 F.3d  at 1138.

Petitioner's third new claim concerns the ineffective assistance of counsel.  Petitioner does not state the factual basis of the claim in his motions. (Doc. 12, 2; doc. 30, 3.)  However, the petition filed in the CCA reveals that Petitioner's ineffective

assistance claim related to trial counsel's failure to correct the
charging information to remove the "willful" element from the
homicide count, to object on that ground with respect to jury
instructions, and to declare a mistrial once the verdict was read
without a finding of willfulness.   (LD 11, typed pages 10-11.)
Again, counsel's allegedly substandard practice related to the scope
of the homicide charge and the legal issues presented to the jury
regarding that charge.   It was not based on same core facts as the
timely filed claims, which concerned a pretrial identification, the
prosecutor's withholding of evidence, and jury selection error.   The
Court concludes that Petitioner's new claims concerning the
ineffective assistance of counsel are based on events that are
separate in both time and type from the originally raised episodes.

Petitioner's fourth claim alleges that because there was
evidence of a motive unrelated to acquiring money, the evidence was
insufficient to support a conviction of attempted robbery and to
satisfy special circumstances based on murder in the course of a
robbery.   (Doc. 30, 3.)   This claim relates specifically to the
evidence of attempted robbery and the sufficiency of that evidence
to support the conviction of attempted robbery.   The facts pertinent
to this issue are separate in both time and type from the pretrial
identification, the Brady error, or jury selection error.   The
initial claims concerned specific action on the part of law
enforcement personnel before trial, the prosecutor outside of the
presence of the jury, or the parties and the court during jury
selection, while the new claim concerns the body of evidence
relating to robbery that was presented to the jury.

In sum, the Court concludes that the claims Petitioner seeks to

add to the petition in this proceeding are unexhausted, untimely, and would not relate back to the originally filed claims. Accordingly, it would be futile to stay the proceedings for Petitioner to exhaust his state court remedies as to these claims and for Petitioner ultimately to seek to amend the petition to add these claims.  Therefore, Petitioner's request for a <u>Kelly</u> stay should be denied because granting such a stay to permit exhaustion of Petitioner's four new claims would be futile.  <u>See</u>, <u>King v. Ryan</u>, 564 F.3d at 1141-43.

Although these issues arise in the context of a motion for a stay and a motion for leave to file an amended petition, ruling on Petitioner's motion removes the availability of a federal forum with respect to Petitioner's four new claims.  Accordingly, the undersigned proceeds by way of findings and recommendations.

VI.  <u>Recommendations</u>

In accordance with the foregoing, it is RECOMMENDED that:

1) Petitioner's motion for a stay of the proceedings be DENIED.

These findings and recommendations are submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within fourteen (14) days (plus three (3) days if served by mail) after service of the objections.  The Court will then review

the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time limit may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

    Dated:  __**August 23, 2013**__          _____**/s/ Sheila K. Oberto**
                                      UNITED STATES MAGISTRATE JUDGE